**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**ROYCE RIALS**                                                                          **PLAINTIFF**

**VS.**                                                      **CIVIL ACTION NO. 3:06CV583BA**

**PHILIP MORRIS, USA; R. J. REYNOLDS
TOBACCO COMPANY; LORILLARD
TOBACCO CO.; HART'S SHOPWORTH
FOOD STORE and JOHN DOE TOBACCO
ENTITIES**                                                                          **DEFENDANTS**

## OPINION AND ORDER

This matter came before the court on the Plaintiff's Motion to Remand, which is based upon his contention that there is not complete diversity of citizenship between him and Defendant Hart's Shopworth Food Store, a Mississippi corporation. The Plaintiff, Royce Rials, argues that this case should be remanded to the Circuit Court of Copiah County, Mississippi, from which it was removed. The diverse Defendants (hereinafter referred to as the "Tobacco Company Defendants") oppose this Motion, contending that Hart's has been fraudulently joined and should be dismissed from this action, permitting it to proceed in this court pursuant to 28 U.S.C. § 1332(a). Having reviewed the Motion and all of the related pleadings, the court is of the opinion that Hart's has been fraudulently joined and should be dismissed and, further that the Motion to Remand should be denied.

Hart's Shopworth Food Store is a local grocery store in Copiah County that has been in business since 1950. Cigarette products have been sold at the store since its early days. Former employees have submitted affidavits stating that the store's first owner worked with representatives from cigarette companies in setting up sales displays. They also state that the store received "concessions" for promoting tobacco products. Thus, the Plaintiff claims, Hart's is liable, along with

the tobacco companies, for his injuries resulting from smoking cigarettes, which include contracting lung cancer.

The court's analysis begins with the familiar tenet that the removing party has the burden of proving that the federal court has jurisdiction to hear the case. *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir.), *cert. denied,* 510 U.S. 868 (1993). Therefore, the removing party also has the burden of establishing that a non-diverse party was fraudulently joined. *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 190 (5th Cir. 1989). To meet that burden, the removing party may ask that the court "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits and deposition testimony." *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995). In considering that evidence, "the district court is not to apply a summary judgment standard but rather a standard closer to the Rule 12(b)(6) standard." *McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004). Even under this standard, which so favors the non-moving party, a plaintiff "may not rest upon the mere allegations or denials of his pleadings." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000).

To establish fraudulent joinder, the removing party must prove: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)). In the absence of actual fraud, the standard for judging fraudulently joinder requires a determination of whether there is a "reasonable basis" on which to predict that the plaintiff will be able to establish liability on the part of the non-diverse defendant under state law. *Badon v. R.J.R. Nabsico, Inc.*, 224 F.3d 382, 390 (5th Cir. 2000). Thus, the Tobacco Company Defendants who removed this action must show that Rials has no reasonable

possibility of recovery against Hart's under Mississippi law.  The Fifth Circuit further refined this test in *Travis*, stating, "If there is arguably a *reasonable basis* for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder.  This *possibility, however, must be reasonable,* not merely theoretical."  *Travis*, 326 F.3d at 648, emphasis in the original (citing *Great Falls Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).

As stated earlier, the standard used to analyze a plaintiff's chance of success favors him, as the court must resolve all disputed questions of fact and ambiguities of law in his favor.  *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992).  Even under this standard, however, the party seeking remand may not rely on conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant.  *Badon*, 224 F.3d at 392-93.  Moreover, the reviewing court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts" to support its claims against the non-diverse defendant.  *Id*., citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  However, if the court, after resolving all disputed questions of fact and ambiguities of law in favor of the plaintiff, finds that there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder," and the case must be remanded for lack of federal jurisdiction. *Jernigan*, 989 F.2d at 816.

Rials has sued all of the Defendants on the following theories:

1) Products Liability - failure to warn
2) Negligence
3) Conspiracy
4) Deceptive Advertising
5) Fraudulent misrepresentation
6) Negligent misrepresentation.

His product liability (failure to warn) claim has no reasonable likelihood of success for two reasons: first, the Mississippi Supreme Court has held that Miss. Code Ann. § 11-1-63 precludes any action against a tobacco company based on a theory of product liability; and, second, Hart's would be protected by the "innocent seller" amendment to that statute.  In *Lane v. R. J. Reynolds Tobacco Co.*, 853 So. 2d 1144, 1148-49 (Miss. 2003), the Mississippi Supreme Court interpreted Mississippi's product liability law, as codified at § 11-1-63, as "preclud[ing] all product liability actions against tobacco companies."  *Id*. at 1149.  In so holding, the court noted, "The harm from tobacco use has been well documented, and elimination of the sources of the harm would greatly reduce the desirability of cigarettes."  *Id*.  While, strictly speaking, Hart's is not a "tobacco company," the statute speaks to both manufacturers **and** sellers.  The court is of the opinion that this statute provides Hart's with a defense to any product liability claim.

Even if it did not, in 2004, the Mississippi Legislature amended the statute to add an "innocent seller" defense.  The new language states:

> (h) In any action alleging that a product is defective pursuant to paragraph (a) of this section, the seller of a product other than the manufacturer shall not be liable unless the seller exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought; or the seller altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recover of damages is sought; or the seller had actual or constructive knowledge of the defective condition of the product at the time he supplied the product.  It is the intent of this section to immunize innocent sellers who are not actively negligent, but instead are mere conduits of a product.

Rials's first claim against Hart's would, therefore, fail, unless he can prove that it falls within one of the exceptions listed above.  The Tobacco Company Defendants have presented affidavits from an employee of Hart's from the early 1970's to the early 1990's, the manager of Hart's from 1986 to

2001, the president from 1996 to 2001, and the current president.  The affidavits methodically track the language of § 11-1-63(h), denying that Hart's had any involvement in design, testing, manufacture, packaging or labeling of cigarettes.  Rials has offered nothing to controvert those statements; therefore, there is no reasonable basis on which to predict that he will be successful in state court on his product liability count.

However, the rationale of *Lane* does not preclude **all** actions against cigarette manufacturers, but only those based on a theory of product liability.  *R. J. Reynolds Tobacco Co. v. King*, 921 So. 2d 268, 273 (Miss. 2006).  In *King*, the court affirmed the trial court's decision to permit allegations of fraudulent misrepresentation, conspiracy to defraud, negligent misrepresentation, deceptive advertising and wrongful death against a tobacco company to proceed.  Thus, this court cannot conclude that § 11-1-63 would eliminate Rials's remaining claims against Hart's.

While the claims would not be precluded by statute, the court concludes that the nature of these allegations, as refuted by the affidavits provided by the Defendants, would not have a reasonable possibility of success in state court, even under these other theories.  The claims of deceptive advertising, fraudulent misrepresentation, and negligent misrepresentation each require that Rials establish the requisite elements of fraud, or deception: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) the speaker's intent that it should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.  *Eagle Mgmt., LLC v. Parks*, 938 So. 2d 899, 904 (Miss. Ct. App. 2006); *see also* Miss. Code Ann. § 97-23-3 (1972) (codifying the crime of deceptive advertising, but protecting advertisers who disseminate product information "in good faith

and without knowledge of the falsity or deceptive character thereof.")  Rials contends that Hart's "had knowledge of the Defendant Tobacco Companies suppressing information on the addictive effects of nicotine and the harmful effects of smoking and engaged in a conspiracy with Defendant Tobacco Companies to defraud the consumers."  However, the affidavits offered by the Defendants provide evidence that Hart's had **no** knowledge of the dangers of cigarettes, other than those commonly known by the public.

Specifically, affiant, Dudley Norman (who gave an affidavit both to the Tobacco Company Defendants and to the Plaintiff) stated in his first affidavit, "During my employment, Hart's did not have actual or constructive knowledge of addictive effects of nicotine or harmful effects of smoking beyond that commonly known by members of the general public."  In his second affidavit, produced by the Plaintiff, Norman states, "Notwithstanding my previous affidavit, when I was employed at Harts Grocery Store I knew that cigarettes were harmful and could cause cancer and I also knew that cigarettes were addictive.  I believe that Mr. Hart knew this as well."  The Plaintiff also produced an affidavit from Kenneth McClendon, who worked at Hart's in the 1960's.  According to McClendon, prior to a warning being placed on cigarette packs, "it was common knowledge that cigarettes were harmful and addictive."  Neither of these affidavits supports Rials's claim of fraud, as neither refutes the defense affidavits that state that Hart's had no knowledge about the dangers of cigarettes beyond that of the general public.  That being the case, Rials cannot establish that Hart's made a representation that it knew to be false and that Rials believed to be true, a requisite element for his last three claims.  Thus, there is no reasonable possibility that Rials could succeed on those claims in state court.

Rials's conspiracy claim is general – that Hart's knew of the suppressed information regarding the dangers of cigarettes, but "engaged in a conspiracy with Defendant Tobacco Companies to defraud the consumers."  One of the essential elements of a claim of civil conspiracy is that the persons so charged have "a meeting of the minds on the object or course of action;" another requisite is that those persons engage in "one or more unlawful overt acts."  *Gallagher Bassett Services, Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004).  However, in the lengthy recitation of facts in Rials's complaint, titled "The Industries Fraudulent or Negligent Misrepresentation and the Conspiracy to Defraud the Consumer," there is not a single allegation that specifically pertains to Hart's.  Instead, this section of the Complaint sets out, in detail, the alleged activities of the Tobacco Company Defendants in suppressing research and other information regarding the nicotine content of tobacco products.  Hart's is never mentioned, and the affidavits submitted by the Defendants specifically deny any conspiracy between Hart's and the Tobacco Company Defendants.  In response, Rials has submitted the following statements:

      5.     I believe the sales representative for these companies [cigarette distributors] dealt with the tobacco company's representatives in selling the respective cigarette products.

      6.     I believe it was Mr. Hart along with sales representatives who decided how to display and sell the cigarettes.  I also believe that Mr. Hart and/or Hart's received concessions for the cigarette sales representatives for the sale of their respective products.

Affidavit of Dudley Norman.

      4.     Cigarettes were purchased by Mr. Hart.  Mr. Hart worked with the sales representatives for the respective cigarette tobacco companies in setting up their own respective display.  The cigarette sales person also put up ads for their cigarette products in the store windows.

> 5.    The sales representatives for the tobacco products worked with Mr. Hart in promoting the products and in providing concessions to Mr. Hart for promoting their respective products.

Affidavit of Kenneth McClendon.

Norman's affidavit is largely based on his "belief," rather than personal knowledge, which, in this summary-judgment type analysis, is hearsay evidence that may not be considered by the court. *Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992); Fed. R. Civ. P. 56(e). Even if both affidavits are considered, they do not establish even a possibility of a conspiracy. The only overt acts in which they allege that Hart's engaged "in concert" with anyone connected to the Tobacco Company Defendants was setting up product displays with the help of sales representatives. Since displaying tobacco products is not an unlawful activity, these allegations cannot form the basis of a conspiracy claim. The affidavits further claim that Hart's received "concessions" for advertising tobacco products. While that term is not further defined, there is no indication that these "concessions" were unlawful in any sense. In order to defeat a claim of fraudulent joinder, general conspiracy claims will not suffice. *Badon*, 224 F.3d at 391-92. For these reasons, the court is of the opinion that there is no reasonable possibility that the Plaintiff could succeed on his conspiracy claim in state court.

Finally, Rials claims that Hart's was negligent – alleging, in his Complaint, that the "Defendants were under a duty to Plaintiff to exercise reasonable care in the design, testing, manufacture, and sale of their cigarettes." Hart's did not participate in the design, testing, or manufacture of cigarettes; therefore, under Mississippi law, to make out a claim of negligence, Rials must establish the duty of care that Hart's owed him in selling that product. *McIntosh v. Victoria Corp.*, 877 So. 2d 819, 823 (Ms. Ct. App. 2004). Other than alleging that Hart's failed to warn him

of the danger of cigarettes (which Rials's witnesses admit was a matter of public knowledge) or that Hart's misrepresented the nature of cigarettes (which could only be possible if Hart's knew more about their nature than Rials did), there is no allegation that Hart's committed any act connected with the sale of cigarettes that breached any conceivable duty it had to Rials. Thus, the court cannot predict that Rials would have a reasonable chance to succeed against Hart's in state court on this claim.

In his Motion to Remand, Rials also contended that the procedure by which this case was removed to this court was improper. Specifically, he alleged that Hart's did not join in the Notice of Removal. In response, the Tobacco Company Defendants argued that, as Hart's was fraudulently joined in this action, it need not consent to removal. *Jernigan*, 989 F.2d at 815. That is a correct statement of the law, and the Plaintiff has not pursued that argument in his rebuttal pleading. Therefore, the court finds that the proper procedure was used in removing this case.

Having claimed that this court has diversity jurisdiction over this matter, the Defendants have also established that there are no claims against the non-diverse Defendant upon which Rials has a reasonable likelihood of succeeding in state court. Therefore, this court must conclude that Hart's Shopworth Food Store was fraudulently joined in this action for the purpose of defeating the court's diversity jurisdiction. That being the case, Hart's should be dismissed from this action, and the Plaintiff's Motion to Remand should be denied.

IT IS, THEREFORE, ORDERED that the Motion to Remand filed by Plaintiff Royce Rials is hereby denied.

IT IS FURTHER ORDERED that Defendant Hart's Shopworth Food Store is hereby dismissed from this case with prejudice.

9

IT IS SO ORDERED, this the 21st day of February, 2007.


                                    s/William S. Barbour, Jr.
                    _____
                             UNITED STATES DISTRICT JUDGE